# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE: ROBLOX CHILD SEXUAL EXPLOITATION/ASSAULT LITIGATION | MDL Docket No. 3166 |

## PLAINTIFF JOHN DOE'S INTERESTED PARTY RESPONSE IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Movant John Doe ("Plaintiff"), by and through his undersigned counsel, respectfully submits this Brief in Support of the Motion for Transfer and Coordination or Consolidation, as well as any cases currently or subsequently filed involving similar common questions of fact, to the United States District Court for the Northern District of California.

## I. INTRODUCTION

Plaintiff, like the plaintiffs in other cases for which consolidation is requested, seeks to transfer and centralize Plaintiff's Action[1] and all Related Actions[2] that seek damages relating to Defendant Roblox Corporation's ("Roblox" or "Defendant Roblox") defective design of the

---

[1] *John Doe v. Roblox Corp.*, Case No. 3:25-cv-02175, (N.D. Tex. Aug. 13, 2025).
[2] *See* attached Schedule of Related Actions (collectively, the "Actions").

Roblox gaming application platform ("platform") causing grave harm to minor users. At the time of this filing, thirty-one (31) cases have been filed across twelve (12) United States district courts arising from Roblox's conduct. As set forth fully below, action by this Panel to transfer, consolidate, and coordinate these actions is necessary and appropriate where, as here, common questions of fact and law abound, and transfer will further the convenience of the parties and witnesses, promote the just and efficient litigation of these actions, and serve the goals of judicial economy, thereby advancing the overall interests of the Court. Consolidation and transfer to the Northern District of California is appropriate because the Actions involve common issues of law and fact and Defendant Roblox has its principal place of business in California.[3]

Plaintiff respectfully requests that the Panel determine Plaintiff's action—along with the related Actions and all other cases arising out of Defendant Roblox's defective design of the Roblox platform—be transferred to the Northern District of California before Judge William H. Orrick or Chief Judge Richard Seeborg.

## II. BACKGROUND

This case presents a matter of significant public concern involving a multibillion-dollar technology platform, Roblox, falsely represented as safe for children. In truth, the platform's design is alleged to be dangerously and unreasonably defective, providing a platform that enables adult predators to easily target, contact, and exploit minors. Defendant Roblox is accused of misleading users and parents through widespread safety claims while knowingly allowing the platform and its minor users to remain vulnerable to abuse. Roblox also failed to warn users and parents of the known, appreciable risk to minors of sexual exploitation and abuse created by using its platform. Despite having the resources and access to safer design alternatives, Roblox

---

[3] Roblox Corporation is a Nevada corporation with its principal place of business in San Mateo, California.

repeatedly failed to implement a multitude of reasonable protective measures. This failure, allegedly driven by a corporate strategy that prioritizes user growth and investor satisfaction over user safety, has resulted in serious harm to vulnerable users like Plaintiff.

Plaintiff asserts that Roblox owed a legal duty to exercise reasonable care in the creation and operation of the platform and to protect users—particularly minors—from foreseeable harm. This duty stems from both Roblox's direct control over the platform and a special relationship with users who relied on its promises of safety. The platform was specifically marketed toward children, and Roblox benefited significantly from their engagement. Roblox also profited handsomely from transactions made using its digital currency, Robux, regardless of whether those transactions were facilitated as part of a minor's exploitation. With superior knowledge and control, Roblox had the technical and other means, and the obligation, to prevent misuse and criminal activity on its platform. By failing to act on its knowledge of the platform's dangers and neglecting to enforce effective safety and reporting mechanisms, Defendant Roblox is alleged to have enabled foreseeable exploitation and caused devastating consequences for users such as Plaintiff.

Facing mounting exposure, Roblox now seeks to shield itself from public accountability by asserting that these cases belong in arbitration. To date, in the twenty-six filed cases, Roblox has already moved to compel arbitration or intimated it may move to compel arbitration in at least eight (8) cases.[4] These cases present similar questions, *e.g.* the enforceability of Roblox's

---

[4] Roblox has moved to compel in two (2) cases: *Doe v. Roblox Corporation et al.,* Docket No. 4:25-cv-03520 (N.D. Cal. 2025) and *Doe v. Roblox Corporation et al.,* Docket No. 3:25-cv-00128 (S.D. Tex), and field stipulations indicating their intent to move to compel in six (6) actions: *Doe v. Roblox Corporation.,* Docket No. 4:25-cv-04329 (N.D. Cal. 2025), *Doe v. Roblox Corporation et al.,* Docket No. 1:25-cv-04953-SEG (N.D. Ga.), *T.T. v. Roblox Corporation.,* Docket No. 4:25-cv-00314-RGE-WPK (S.D. Iowa), *Doe v. Roblox Corporation.,* Docket No. 3:25-cv-02175 (N.D. Tex.), *Doe v. Roblox Corporation.,* Docket No 1:25-cv-00172 (N.D. Tex.), *Doe v. Roblox Corporation.,* Docket No. 3:25-cv-02175 (N.D. Tex.), *A.E. at al. v. Roblox Corporation.,* Docket No 5:25-cv-00959 (W.D. Okla.). Notably, most of the actions filed against Roblox have been filed recently, and therefore, Roblox has not been required to answer or file a responsive pleading.

arbitration clauses under federal and/or state law, whether the arbitration provisions cover the disputes brought, whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act renders all of Roblox's arbitration provisions unenforceable, or whether the plaintiffs ever assented to or affirmed any of the arbitration provisions. As with all cases involving similar questions of fact and law, consolidating the application of Roblox's arbitration provision(s) in these cases is appropriate and necessary.

### III. LEGAL STANDARD

Transfer and consolidation are appropriate when actions pending in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

In deciding whether to transfer a case under Section 1407, the Panel typically considers whether centralization would: (1) eliminate duplication in discovery; (2) avoid conflicting rules and schedules; (3) reduce litigation costs; and (4) conserve the time and effort of the parties, attorneys, witnesses, and courts. *See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixtures Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)).

## IV. ARGUMENT

### A. TRANSFER OF THE ACTIONS TO ONE DISTRICT COURT FOR CONSOLIDATION OR COORDINATION IS APPROPRIATE UNDER 28 U.S.C. § 1407.

The creation of a multidistrict litigation ("MDL") is appropriate here because (1) "civil actions involving one or more common questions of fact are pending in different districts," and (2) transfer will serve "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Both factors strongly favor consolidating the pretrial proceedings of these actions. Moreover, "[c]entralization [permits] all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

#### 1. Consolidation or Coordination Is Appropriate Because Related Actions Involve One or More Common Questions of Fact.

The first requirement under 28 U.S.C. § 1407 for transfer and centralization of multiple actions is the presence of common questions of fact, because transfer and pretrial coordination of actions sharing common questions of fact "conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Section 1407 does not require a "complete identity or even majority of common factual issues" to justify transfer. *See In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) *see also*, *In re: Rembrandt Techs., L.P., Patent Litig.*, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007). The Panel consistently finds that transfer and centralization are appropriate for cases involving overlapping factual issues and substantial commonality of questions of fact and

law. *See, e.g., In re Flat Glass Antitrust Litig. (No. II)*, 559 F. Supp. 2d 1407, 1408 (J.P.M.L. 2008) (all actions alleged similar conspiracy against defendants; centralization in Western District of Pennsylvania was appropriate); *In re: JUUL Labs, Inc. Mktg., Sales Practices, Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019); *In re: Yasmin, Yaz (Drospirenone) Mktg., Sales Practices & Prods Liab. Litig., MDL*. 2100, 2009 WL 3163531, at *1 (Oct. 1, 2009) ("We find that these 32 actions involve common questions of fact, and that centralization under Section 1407 in the Southern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation."); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("The Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Western District of Washington will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").

Since 2016, Roblox's Terms of Use ("TOU") has imposed a mandatory individual arbitration clause and class action waiver upon its users. To date, Roblox has revised its arbitration provision at least 8 times over the past 9 years, now to the point of being unconscionable and unenforceable even if enforcement were appropriate in a case – which it is not here. Regardless of cases where the abuse (i) predates its arbitration clause, or (ii) happened to a minor who cannot contract, or (iii) happened after the enactment of the End Forced Arbitration Act ("EFAA"), or (iv) happened under some unconscionable version of its arbitration provision, Roblox is demanding district courts around the country send these cases to arbitration.

MDL centralization is appropriate where, despite differing arbitration clauses, the legal questions about enforceability and scope are recurring and intertwined with Roblox's standard business practices. Roblox has already sought or is in the process of seeking to enforce its

arbitration provision in at least 8 of the 26 cases filed. Plaintiff contends that Roblox's arbitration provision – and all of its iterations – is unenforceable as a matter of law. The effect of multiple arbitration provisions here inherently creates complex litigation involving *identical* questions, including: (1) the enforceability of the arbitration clauses under federal and/or state law (*e.g.*, unconscionability, procedural impropriety, public policy), (2) whether the arbitration provisions cover the claims brought, (3) whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act renders all of Roblox's arbitration provisions unenforceable, and (4) whether the Plaintiffs could have ever assented to or affirmed any of the arbitration provisions. That is, regardless of whether each Action involves one or more arbitration provisions in Roblox's TOUs, the company-wide practice of structuring, imposing, and enforcing such provisions and the application of state and federal law rendering its arbitration provision unenforceable is common across all actions.

These overlapping questions about the enforceability of Roblox's arbitration provisions bolster Plaintiff's request for centralization because it would allow for streamlined briefing and uniform resolution of these disputes. Indeed, the *Uber* Panel, finding it was not bound by Uber's Terms of Use, determined that centralization was appropriate where plaintiffs suggested – like here – that they will challenge the enforceability of Uber's Terms of Use. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396, 1399 (J.P.M.L. 2023), *supplemented*, 712 F. Supp. 3d 1394 (J.P.M.L. 2024) ("Uber's argument that its Terms of Use preclude the motion for centralization is not persuasive. The Panel is not bound by Uber's Terms of Use, and Section 1407(c) grants the Panel the authority to centralize civil cases upon its own initiative. Moreover, plaintiffs suggest they will challenge the enforceability of Uber's Terms of Use. Centralization thus will allow for streamlined briefing on this common issue."). Likewise, this Panel is not bound

by Roblox's TOU and should centralize this case, especially because Plaintiffs intend to challenge the enforceability of Roblox's TOU. Moreover, in a different coordinated case where Roblox is being sued for injuries to minors as a result of video game addiction, Roblox agreed to a process by which the court would resolve the arbitration issues, further confirming resolution of such following centralization is appropriate here. *See In re Videogame Addiction Cases*, JCCP No. 5363, Joint Report for Aug. 26, 2025 Status Conference (Cal. Super. Ct. L.A. Cnty. Aug. 26, 2025).

Additionally, because Section 1407 does not require a majority of common factual issues as a condition for transfer, the many common questions thus presented are more than sufficient to satisfy Section 1407. *See In re: Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005); *see also*, *In re: Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) ("the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core"). Even if this Panel were to find the varying arbitration issues here create what are seemingly multiple tracks, centralization is still appropriate. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) ("Although individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization. The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims. The alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings.")

Thus, consolidation or coordination is appropriate under 28 U.S.C. § 1407(a) because the actions involve significant common issues of fact.

### 2. Centralization of the Actions Will Promote Just and Efficient Conduct of the Actions and Efficiently Manage Arbitration Disputes.

Multidistrict litigation ("MDL") under 28 U.S.C. § 1407 exists to streamline complex litigation involving common questions of fact across multiple cases filed in different districts. In cases where plaintiffs have brought suit against the same defendant, but the cases are governed by conflicting arbitration provisions, MDL is especially appropriate. To determine whether a transfer would promote the just and efficient determination of the arbitration issue, the Panel must consider multiple factors, including (1) avoidance of inconsistent rulings between cases, (2) prevention of duplicative discovery on common issues, (3) avoidance of undue burden and expense on the parties, and (4) promoting efficiency and judicial economy. *See e.g.*, *In re Bristol Bay, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506–507 (J.P.M.L. 1976). Here, these factors decisively favor centralization.

Early consolidation will reduce discovery costs and burdens between the parties. Plaintiffs in this litigation will necessarily be seeking to obtain the same discovery from Defendant Roblox. Currently, all of the Actions are in the initial stages and have yet to proceed to discovery. Roblox has filed or is planning to file motions to compel in at least 8 cases. All Actions will oppose Roblox's arbitration provision as unenforceable under state and federal law. As a result, discovery requests focused on contract formation, usage, assent, and threshold issues such as arbitrability, enforceability, and unconscionability are likely to occur in every single Action. If the cases continue to proceed separately amongst many districts across the country, Plaintiffs may be subject to differing amounts of discovery and Defendants may be subject to substantial duplicative and/or differing discovery. Coordinating such motions practice and discovery before one judge will avoid overlapping and duplicative requests, promote an organized and coherent approach to discovery and motions practice, and minimize the costs in time, money, and effort that parties and the courts

would otherwise have to devote to the chaotic pretrial proceedings that would result were the cases forced to proceed on separate schedules and in separate courts.

Moreover, centralization is vital to eliminate the risk of inconsistent rulings. Courts evaluating similar claims with conflicting arbitration provisions are likely to reach inconsistent rulings on: (1) whether arbitration is required at all, (2) which claims are arbitrable, (3) which arbitration forum governs, (4) whether class arbitration is permitted, and (5) whether the agreements are enforceable or unconscionable. These inconsistencies can lead to fragmented litigation, forum shopping, and conflicting precedents. Centralization and transfer avoids these unfavorable outcomes by consolidating pretrial proceedings before a single judge, who can develop a consistent legal framework and manage arbitration-related discovery efficiently. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396, 1398 (J.P.M.L 2023), *supplemented*, 712 F. Supp. 3d 1394 (J.P.M.L. 2024) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary"); *In re: Equinox Fitness Wage & Hour Emp. Pracs. Litig.*, 764 F. Supp. 2d 1347, 1349 (J.P.M.L. 2011) (the Panel is convinced that cooperation among the parties and deference among the courts can easily minimize the possibilities of duplicative discovery or inconsistent pretrial rulings); *In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.,* 446 F. Supp. 242, 244 (J.P.M.L.1978) (same).

Certainly, having dozens or hundreds of similar cases filed in different courts involving arbitration disputes with a common defendant is counterintuitive and wasteful of judicial resources. Consolidating these Actions will enable the transferee court to establish a streamlined process to efficiently and consistently address the anticipated motions to compel arbitration. This approach would not be unprecedented, especially to Roblox. In the *Video Game Addiction*

*Cases* consolidated before Judge Lawrence Riff in the Superior Court of Los Angeles County, Roblox itself agreed to a bellwether process in which the court would first resolve a select number of arbitration motions. *See In re Videogame Addiction Cases*, JCCP No. 5363, Joint Report for Aug. 26, 2025 Status Conference (Cal. Super. Ct. L.A. Cnty. Aug. 26, 2025); s*ee also*, Omnibus Order Following Videogame Addiction Cases, JCCP 5363 (Cal. Super. Ct. L.A. Cnty. Sept. 10, 2025) (setting forth a protocol for the selection of six bellwether cases to address arbitration issues). Those cases, like the Actions here, allege that Roblox designed its platform in ways that harm minors, and Roblox has acknowledged that centralized resolution of arbitration issues promotes efficiency. *See id*. By Roblox's own agreement in the *In re Videogame Addition Cases*, the arbitration issue was consolidated. Roblox should not now thwart consolidation of the arbitration issue here. The Panel should accordingly grant Plaintiff's motion for transfer and consolidation.

### B. THE PANEL SHOULD TRANSFER AND CONSOLIDATE THE ACTION IN THE NORTHERN DISTRICT OF CALIFORNIA

In determining the most appropriate transferee forum, the Panel considers, among other factors, "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, . . . the experience, skill, and caseloads of available judges," where the first filed case is located, and whether the proposed district provides an accessible location. *See* Manual for Complex Litigation (Fourth) § 20.131 (2005); *In re: Educ. Testing Serv. Plt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004) (Panel found district appropriate where four of the thirteen actions were already pending in the district, the district provided an accessible, metropolitan location, the district had favorable caseload conditions, and the judge had experience managing multidistrict litigation); *In re Wheat Farmers Antitrust Class*

*Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L.1973) (Panel considered the conveniences of the parties and witnesses, location of relevant documents, stage of pretrial proceedings, and the status of civil dockets).

Although many district courts would be suited to oversee this litigation, the Northern District of California, as the transferee court is preferable and proper to "promote the just and efficient conduct of [the] actions" and advance the "convenience of parties and witnesses." 28 U.S.C. §1407. Given that Defendant is headquartered in California and nineteen (19) of the thirty-one (31) cases are already filed in the Northen District of California, the Northen District is simply more convenient and most appropriate for forum transfer. The witnesses and evidence at issue are likely located in California, depositions would be most conveniently taken in California, and the parties and their counsel are already accustomed to litigating similar issues in the Northern District of California.

Moreover, the Northern District of California also has extensive experience coordinating federal cases with California state court cases, including Judicial Council Coordination Proceedings. At least three state court actions have been filed in California,[5] and many more will likely be filed soon. The state court actions assert factual allegations nearly identical to the state court cases. As a result, transfer of the federal actions to the Northern District of California will promote coordination between the parallel state and federal cases. *See, e.g.*, *In re Avaulta Pelvic Support Systems Prods. Liab. Litig.*, 746 F. Supp. 2d 1362, 1364 (J.P.M.L. 2010) (transferring to the Southern District of West Virginia because "centralization in this district will facilitate coordination with West Virginia state court actions").

---

[5] *Dallas v. Roblox Corp.*, No. 25-629056 (Cal. Super. Ct., San Francisco Cty.); *Doe v. Roblox Corp.*, No. 25-CIV-05901 (Cal. Super. Ct., San Mateo, Cty.); *Doe v. Roblox Corp.*, No. 25-CIV-01193 (Cal. Super. Ct., San Mateo, Cty.).

For all the above reasons, the Northern District of California is the most suitable forum for this MDL. While the district is home to numerous judges who are qualified to handle this MDL, Judge William H. Orrick and Chief Judge Richard Seeborg are particularly well-suited for this MDL. This proposed MDL is poised to become exceptionally large and complex in matters of case management, discovery, and cutting edge factual and legal issues. Thus, a veteran judge with significant experience in complex litigation would be beneficial. Given the experience, perceived availability, and demonstrated commitment to efficient administration of complex litigations, the Northern District of California is the appropriate Court, and either Judge Orrick or Chief Judge Seeborg are well-positioned to manage this proposed MDL. Judge Orrick has had extensive experience overseeing complex civil litigation, including *In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation* (MDL 2913), which has been mostly resolved. Likewise, Chief Judge Seeborg has efficiently overseen multiple MDLs including *In re: Optical Disk Drive Products Antitrust Litigation* (MDL 2143) and *In re: Viagra (Sildenafil Citrate) Products Liability Litigation* (MDL 2691), and has the necessary experience and resources to manage this litigation.

## V. **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully request that the Panel grant the motion for transfer, coordination, and consolidation under 28 U.S.C. § 1407, and transfer the above-mentioned Actions and all subsequently filed follow-on actions to a single District Court selected by this Panel.

Dated: September 23, 2025

Respectfully Submitted,

By: */s/ Melissa H. Nafash*
Melissa H. Nafash
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 10022
Tel: (212) 946-9305
mnafash@milberg.com

Gary M. Klinger
Melinda Maxson
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
GKlinger@milberg.com
mmaxson@milberg.com

Alexander E. Wolf
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (858) 209-6941
awolf@milberg.com

Martin D. Gould
Michael R. Grieco
Steven L. Vanderporten
**STINAR GOULD GRIECO & HENSLEY, PLLC**
100 N. Wacker Drive, Suite 100
Chicago, Illinois 60606
Tel: (312) 728-7444
Martin@SGGHLaw.com
Mike@SGGHLaw.com
Steven@SGGHLaw.com

*Counsel for Plaintiff*